IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARCUS WOODSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-546-D |
| ) | |
| OKLAHOMA STATE DEPARTMENT OF ) | |
| OF HEALTH, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

This matter is before the Court for review of the Report and Recommendation [Doc. No. 79] issued July 2, 2008, by United States Magistrate Judge Valerie K. Couch pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). After conducting a thorough analysis of the issues, Judge Couch recommends that summary judgment be granted to Defendant Garfield County on Plaintiff's claims under 42 U.S.C. § 1983 regarding his confinement in the Garfield County Detention Center ("GCDC"), and granted in part and denied in part to the remaining individual defendants.[1]

Plaintiff, who appears *pro se*, has not filed a timely objection to the Report nor requested additional time to object. Thus, the Court finds that Plaintiff has waived further review of the issues addressed in the Report. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). For this reason, the Court will grant Defendant Garfield County's Motion for Summary Judgment and will grant the

---

[1] The Oklahoma State Department of Health was previously dismissed due to Eleventh Amendment immunity. *See* Order 2/27/07 [Doc. No. 36].

individual defendant's Motion for Summary Judgment with respect to Count II of the Complaint (denial of access to the courts), as recommended by Judge Couch.

Defendants Randy Coleman, Bill Winchester and Misty Taylor have filed a timely written objection to the Report, opposing the denial of summary judgment with respect to Plaintiff's § 1983 claims asserted in Count I (unconstitutional conditions of confinement) and Count III (denial of due process). These individual defendants, designated as the GCDC Defendants, are officers responsible for operation of the county jail facility during Plaintiff's detention. They challenge Judge Couch's summary judgment analysis with respect to three issues: (1) whether Judge Couch correctly finds that the circumstances alleged by the GCDC Defendants to justify the harsh conditions of Plaintiff's confinement "have not been established by sufficient evidence," *see* Report & Recom. [Doc. 79] ("Report") at 28; (2) whether Judge Couch correctly finds that Plaintiff has sufficiently shown he was subjected to unconstitutional conditions of confinement; and (3) whether Judge Couch correctly finds that the alleged deprivation violated clearly established constitutional rights of which reasonable jailers would have known. Review of all other issues addressed in the Report, to which no specific objection has been made, are waived by the GCDC Defendants. *See 2121 East 30th Street*, 73 F.3d at 1060 (the "firm waiver" rule requires a timely and specific objection to preserve an issue for review).[2] Regarding the specific issues raised, the Court must make a *de novo* determination of these issues, and may accept, modify, or reject the recommended decision in whole or in part. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

---

[2] The GCDC Defendants do not address Judge Couch's analysis of Plaintiff's claim in Count III that he was denied due process by being held in administrative segregation for 17 months with only an "on the spot" hearing. *See* Report [Doc. 79] at 31-37. Nor do they address Judge Couch's analysis of their affirmative defense that Plaintiff failed to exhaust administrative remedies. *See* Report [Doc. 79] at 11-13.

1.      **Summary Judgment Evidence**

The GCDC Defendants contend that Judge Couch improperly disregarded facts stated in their summary judgment brief that were supported only by unverified "Inmate Notes" submitted as Exhibit 3 to the Motion. Based on Judge Couch's comment in the Report that no affidavit was submitted, Defendants argue that Rule 56(c) permits the consideration of materials other than affidavits and that the Inmate Notes are proper summary judgment evidence. Defendants describe the Inmate Notes as "logs documenting the daily events and occurrences at the Jail facility," and contend these documents fall within the business records exception to the hearsay rule. *See* Defendants' Objection [Doc. 82] ("Objection") at 2, 3-4.

The Court reads the Report somewhat differently than the GCDC Defendants. Defendants are correct that Rule 56 authorizes papers other than affidavits to be used for summary judgment purposes. However, Judge Couch properly noted that the Inmate Notes were submitted without explanation or authentication, and were simply an unverified copy of an unidentified record. Rule 56(e) requires that when papers other than affidavits are submitted, "a sworn or certified copy must be attached to or served with the affidavit" *See* Fed. R. Civ. P. 56(e)(1); *see also Taylor v. Principi*, 141 F. App'x 705, 708 (10th Cir. 2005) (district court could refuse to consider business records submitted for summary judgment without identifying their source or verifying the lack of alteration).[3] More importantly, Judge Couch's criticism of Defendants' evidence is not the only basis for her finding that the GCDC Defendants have not sufficiently established the factual circumstances underlying their motion; she also notes that Plaintiff has refuted the facts stated in the Inmate Notes with his own affidavit. *See* Report at 28. Judge Couch's ultimate conclusion is that

---

[3] Unpublished opinion cited pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1(A).

"genuine disputed fact issues abound" and prevent summary judgment. *See* Report at 29. For reasons discussed below, the Court reaches the same conclusion. Consideration of the Inmate Notes would not alter the Court's ruling.

### 2.     **Unconstitutional Conditions of Confinement**

In the Objection, like the summary judgment briefs, the GCDC Defendants do not dispute Plaintiff's evidence that he was deprived of basic necessities, such as clothing, bedding, warmth, sanitation, food, medical care, and exercise during his confinement. They contend Plaintiff lacked these things, however, as a consequence of his own behavior and legitimate penological concerns. Defendants rely on Plaintiff's admissions in his deposition testimony that meals were withheld when he did not return a meal tray or paper plate from the previous meal, items of clothing were confiscated when he used them to cover lights in his cell, and bedding was denied after Plaintiff damaged or destroyed a mattress and linens. From this, the GCDC Defendants assert that Plaintiff has failed to establish they were exhibiting "deliberate indifference" to his basic needs, as required to establish an Eighth Amendment violation, and that the case on which Judge Couch relies, *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996), is distinguishable. *See* Objection at 8-9.

The GCDC Defendants are correct that *Mitchell* involved different circumstances. There, the plaintiff was one of a group of inmates who had been involved in a riot that nearly destroyed a prison, and upon relocation to another facility, the warden decided to withhold numerous items until the inmates demonstrated good behavior. The plaintiff "was stripped of his clothing, placed in a concrete cell, with no heat at a time when nighttime temperatures hovered in the mid-fifties, provided no mattress, blankets or bedding of any kind, deprived of his prescription eyeglasses, not allowed to leave his cell for exercise, not provided writing utensils, not provided with hot water, and

5

only sometimes allowed minimal amounts of toilet paper . . . for a period of days, weeks, and months depending on the condition." *Mitchell*, 80 F.3d at 1442. The warden testified about his justification for imposing these harsh conditions as follows:

> "To safeguard and be proactive with my particular unit and my staff and in order to best serve the public, I made the decision to deprive [the inmates] of certain things until they showed me that they were going to act like men and not become disruptive and tear up another unit and cause my staff problems. I continued to give them privileges and continued to improve the conditions out there based on their behavior."

*Id*. While acknowledging the deference due prison administrators, the court of appeals declined to "blindly acquiesce to [the warden's] authority" because the alleged deprivations were "numerous and inhumane." *Id*. at 1443. The court held that, in view of the conflicting testimony, "it was for the jury to determine the extent of the deprivations and the credibility of the warden and his intentions." *Id*.

In contrast here, the GCDC Defendants assert that they were not treating basic necessities as privileges to be earned or withheld as punishment. They instead contend that Plaintiff's loss of a mattress and bedding was the consequence of his destruction of the ones provided and that his lack of food and clothing was the consequence of his failure to follow GCDC rules and orders. According to Defendants, their "actions were not based upon culpability as they were not deliberately indifferent to Plaintiff's conditions but merely decisions or attempts to put a stop to Plaintiff's egregious and oftentimes, dangerous behavior." *See* Objection at 8.

Although Defendants cite no legal authority for the proposition that they could withhold basic necessities as a consequence of Plaintiff's noncompliance with jail rules, and the Court is aware of no Tenth Circuit authority on point, research reveals case law on this issue from other appellate courts. In *Freeman v. Berge*, 441 F.3d 543 (7th Cir. 2006), and other cases, the Seventh

Circuit has distinguished between a prison's using deprivation of a necessity as punishment and imposing reasonable conditions to receipt of the necessity. In the latter situation, when an inmate does not receive a necessity like food because he fails to comply with a condition of receiving it, the inmate is "the author of his deprivation rather than a victim of punishment" and the deprivation is essentially "self-inflicted." *Id*. at 544, 547; *see also Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005 (inmate who missed meals due to his refusal to comply with a rule regarding leaving his cell "punished himself"). Even when harsh conditions are imposed as a disciplinary measure aimed at a particular inmate's misconduct, the Second Circuit has applied the "deliberate indifference" standard in the context of competing institutional concerns and considered whether the harsh conditions were reasonably calculated to correct the inmate's behavior and were administered with due regard for the inmate's health and safety. *See Trammell v. Keane*, 338 F.3d 155, 163-66 (2d Cir. 2003). Under this analysis, it is also significant that an inmate can rid himself of the disciplinary measure "by simply reforming his behavior," like a person subject to a civil contempt order. *See id*. at 164; *see also Gillis v. Litscher*, 468 F.3d 488, 493-94 (7th Cir. 2006) (distinguishing *Trammell*, *Rodriguez* and *Freeman* as cases in which the inmate "holds the key to his own fate"). These cases require a "'fact-intensive inquiry under constitutional standards.'" *Gillis*, 468 F.3d at 492 (quoting *Chandler v. Baird*, 926 F.2d 1057, 1064 (11th Cir. 1991)).

In this case, Plaintiff's claim of unconstitutional jail conditions similarly requires a fact-specific inquiry. The GCDC Defendants' argument fails to address all of Plaintiff's allegations and summary judgment evidence. Plaintiff may have missed some meals because he failed to return a tray or paper plate, and requiring the return of such items may be a reasonable condition of receiving food. Plaintiff has testified, however, that after he agreed to comply, "[a] lot of times they wouldn't

even open the tray slot to retrieve the tray." *See* Woodson Dep. 28:17-20. Further, Plaintiff alleges other deprivations that Defendants do not address and that may "have a mutually enforcing effect" when assessing the conditions in combination. *See Mitchell*, 80 F.3d at 1442. For example, the GCDC Defendants do not mention Plaintiff's allegation of inadequate heat and its impact on his lack of clothing and bedding. In addition to considerations of a humane temperature for an unclothed person, *see id*. at 1443, the Court notes that Plaintiff alleges he damaged a mattress in an effort to keep warm and collected paper plates in order to have something to sleep on. Moreover, even when an inmate causes his own deprivation of a necessity such as food, prison officials must maintain due concern for the inmate's health and safety; "a prison can[not] allow a prisoner to starve himself to death, or even to the point at which he seriously impairs his health." *Freeman*, 441 F.3d at 546. Defendants do not acknowledge this principle or attempt to apply it to Plaintiff's case.

In addition, the GCDC Defendants' argument overstates the record. They contend Judge Couch "acknowledges that Defendants initially provided Plaintiff with all of the conditions of which he later complains of having been deprived" and "the conditions under which Plaintiff was confined changed as a result of his own actions." *See* Objection at 5. This argument is made without reference to the Report, and the Court finds no such acknowledgment by Judge Couch. Moreover, the GCDC Defendants' argument appears to rely on "Uncontroverted Facts" stated in their summary judgment brief. *See* Objection at 7. Most of the relevant facts are controverted by Plaintiff.[4] Also,

---

[4] The relevance of some facts discussed by Defendants is unclear. They do not explain, for example, how Plaintiff's covering up his cell window with paper relates to a deprivation of clothing and bedding.

the Court notes that Plaintiff complains of a period of deprivation beginning about January 7, 2006,[5] and continuing until his transfer to custody of the Department of Corrections in April, 2006. These dates appear unrelated to the incidents allegedly documented in the Inmate Notes discussed in Part 1 above, which span a time period from January, 2005, to June, 2005.

In short, upon *de novo* review of the record, the Court finds that many of the circumstances on which the GCDC Defendants rely to justify Plaintiff's deprivations are disputed and that, depending on the conditions and intentions determined by the trier of fact, the record may reasonably permit a determination that Plaintiff was subjected to unconstitutional conditions of confinement and Defendants exhibited deliberate indifference to his health and safety. Therefore, summary judgment on the basis of Plaintiff's alleged failure to show a constitutional violation is inappropriate.

### 3. Clearly Established Law

The GCDC Defendants also assert they are entitled to qualified immunity as a matter of law because there was "no case law intimating that inmates cannot lose their right to the matters complained of herein based on their own conduct" and thus "it would not have been clear to a reasonable prison official in Defendants' position that they were in any way violating Plaintiff's constitutional rights." *See* Objection at 10. Defendants point to factual distinctions between this case and *Mitchell*, and an absence of case law involving sufficiently similar facts. *See Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) ("for a right to be clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

---

[5] Plaintiff testified about two occasions when Defendant Coleman "took everything," but after the first one on December 20, 2005, his items were returned "the next day." *See* Woodson Dep. [Doc. 64-2], 24:19-22.

authority from other courts must have found the law to be as the plaintiff maintains'") (quoting *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)).

The GCDC Defendants' argument rests on sound legal principles but ignores the factual issues presented by the record. Their argument assumes, as discussed above, that undisputed facts establish the deprivations endured by Plaintiff were natural consequences of his own actions rather than conditions imposed as punishment for misbehavior. Numerous published decisions, including *Mitchell* and cases cited therein, made clear in 2005 that conditions of confinement similar to those alleged by Plaintiff are unconstitutional. The GCDC Defendants' argument here that Plaintiff was deprived of necessities only when he damaged an item (such as a mattress), violated a rule (such as placing clothing over a light), or failed to comply with conditions of receipt (such as food), depends on historical facts that either are not established by the summary judgment record or are controverted by Plaintiff. Thus, this issue cannot be determined as a matter of law, and summary judgment on the basis of qualified immunity is inappropriate.

**Conclusion**

For these reasons, the Court adopts Judge Couch's Report and Recommendation [Doc. No. 79] and issues the recommended summary judgment rulings.

IT IS THEREFORE ORDERED that Defendant Garfield County's Motion for Summary Judgment [Doc. No. 63] is GRANTED. Defendant Garfield County through its Board of County Commissioners is entitled to a judgment as a matter of law on all claims.

IT IS FURTHER ORDERED that Defendants Sheriff Bill Winchester, Misty Taylor and Randy Coleman's Motion for Summary Judgment [Doc. No. 64] is GRANTED in part and DENIED in part. The individual defendants are entitled to summary judgment on Plaintiff's § 1983 claim

asserted in Count II of the Complaint alleging a denial of access to the courts, but genuine disputes of material facts preclude summary judgment on Counts I and III alleging, respectively, unconstitutional conditions of confinement and denial of due process.

IT IS SO ORDERED this  17th   day of September, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE